UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SIDNEY McBRIDE, III** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-525** |
| **SHERIFF TIM SOIGNET, ET AL.** | **SECTION: "A"(3)** |

**REPORT AND RECOMMENDATION**

Plaintiff, Sidney McBride, III, filed this *pro se* federal civil action pursuant to 42 U.S.C. § 1983.[1] He sued Sheriff Tim Soignet, Captain Rhonda Ledet, Medical Administrator R. Neal, and Captain Prestenbach.[2] In this lawsuit, plaintiff claimed that, while incarcerated at the Terrebonne Parish Criminal Justice Complex, he was wrongly denied trusty status and participation in a work-release program, defamed, disrespected by a nurse, and denied eyeglasses. He alleged that those violations occurred because he is Black.[3]

On May 26, 2021, the Court held a Spears hearing concerning the allegations in both this lawsuit and a related lawsuit, McBride v. Soignet, Civ. Action No. 21-712 "A"(3).[4] "[T]he Spears

---

[1] That statute allows a plaintiff to sue when his **federally protected rights** are violated by a state actor. In pertinent part, it provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to **the deprivation of any rights, privileges, or immunities secured by the Constitution and laws**, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983 (emphasis added).
[2] The complaint lists the final defendant as "Capt. Pressinback"; however, the individual's surname is in fact Prestenbach. See Rec. Doc. 4.
[3] Although plaintiff was incarcerated when this lawsuit was filed, he has since been released. Rec. Doc. 13.
[4] This Report and Recommendation concerns only the allegations, testimony, and law relevant to the claims in this lawsuit. A separate Report and Recommendation is being issued regarding Civil Action No. 21-712.

procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

Based on plaintiff's Spears hearing testimony, his complaint, and his other attachments and submissions, the Court finds that he is making the following allegations in this lawsuit:

Plaintiff was denied trusty status purportedly because he had in the past made a suicidal statement to the staff of the jail's medical department. However, after he complained to jail officials, explaining that he had not said that he was **suicidal** but only that he was on **psychiatric medication**, he was told he would be given a chance as a trusty as soon as a placement was available. He was in fact later awarded a trusty position, although he subsequently lost the position due to a disciplinary violation.[5]

In a grievance attached to his federal complaint, plaintiff also indicated that the medical department staff denied him participation in a work-release program because he has a "rod" in his leg. Defendant Neal, the jail's medical administrator, responded to that grievance by stating that the medical staff is not part of the approval process for work release.[6]

---

[5] In Civil Action No. 21-712, plaintiff claims that he was wrongly removed from trusty status. That claim is addressed in the Report and Recommendation being separately issued in that case.

[6] In Civil Action No. 21-712, plaintiff claimed that he was denied work release for an entirely different reason, namely due to a disciplinary violation. That claim is also addressed in the Report and Recommendation being separately issued in that case.

Plaintiff feels that the foregoing amounts to defamation, and he alleges that he was actually denied trusty status and work release due to his race, noting that Neal "has not had a Black employee on his staff in forever." However, at the Spears hearing, plaintiff testified that he was not denying that other Black inmates at the facility were granted trusty status and participated in the work-release program.

Plaintiff also attached to his federal complaint a copy of a grievance alleging that he was disrespected by a nurse when he asked about his medications. He felt that was unfair because other inmates received their medications. Neal responded to that grievance by asking plaintiff to identify what medications he was not receiving. After plaintiff identified the medication, Paxil, he was then placed on that medication at the jail.

Plaintiff also later submitted to this Court a copy of another grievance concerning the denial of eyeglasses. The grievance response stated that plaintiff's vision screening during intake two months earlier indicated that his vision was "ok," but he could obtain reading glasses from the commissary if he wished. He was also told that if he could provide documentation showing that he had previously been prescribed eyeglasses, then his request for eyeglasses would be reconsidered. Plaintiff claims that, too, was actually a form of racial discrimination because two White inmates were not required to provide similar documentation. At the Spears hearing, plaintiff conceded that he did not know if the White inmates in question had vision problems detected during the intake vision screening process.

Because plaintiff filed this lawsuit *in forma pauperis*, the Court must screen the case before it can proceed. Specifically, federal law provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> (i)      is frivolous or malicious;
> (ii)     fails to state a claim on which relief may be granted; or
> (iii)    seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In determining whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (footnote, citation, and quotation marks omitted). The United States Supreme Court has held:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Although broadly construing the complaint,[7] the undersigned recommends that, for the following reasons, this action be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

## Trusty Status/Work Release

Plaintiff first complains that his constitutional rights were violated when he was denied trusty status and participation in a work-release program. However, a critical problem with those claims is immediately apparent: an inmate has no federal constitutional right to either of those classifications. "There is no constitutional right to hold the position of trusty." Inmates, Washington County Jail v. England, 516 F. Supp. 132, 141 (E.D. Tenn. 1980), aff'd, 659 F.2d 1081 (6th Cir. 1981); accord Naquin v. Jack, Civ. Action No. 20-458, 2020 WL 8675909, at *11 (E.D. La. July 16, 2020) ("Courts have repeatedly held that an inmate has no protected liberty interest in becoming a trusty."), adopted, 2021 WL 780750 (E.D. La. Mar. 1, 2021); Magee v. Crowe, Civ. Action No. 09-3142, 2010 WL 630011, at *14 (E.D. La. Feb. 19, 2010) ("Federal courts, including the Fifth Circuit and district courts within it, have repeatedly held that an inmate has no protected liberty interest in becoming a trustee."). Likewise, "[i]t is clear that a prisoner has no federally-protected right to participate in a work-release program." Dorsey v. Nelson Coleman Correctional Center, Civ. Action No. 09-7673, 2010 WL 677742, at *2 (E.D. La. Feb. 24, 2010); accord James v. Hertzog, 415 F. App'x 530, 532 (5th Cir. 2011) (noting that because an inmate has no enforceable expectation of placement in a work-release program, he has no entitlement to due process in a work-release determination); Ruffins v. Elliot, Civ. Action No. 14-

---

[7] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

1042, 2014 WL 6774180 (E.D. La. Dec. 2, 2014)(same).  Accordingly, the mere fact that plaintiff was denied those classifications is not, in and of itself, actionable under 42 U.S.C. § 1983.

Plaintiff contends, however, that the denials here were nevertheless actionable because the **reason** for the denials ran afoul of a constitutional protection, namely the right not to be subjected to discrimination due to his race.  If that allegation of discriminatory motivation were plausible, then he would in fact have stated an actionable claim.  See Bentley v. Beck, 625 F.2d 70, 70-71 (5th Cir. 1980) ("While we have stated that prison officials must have broad discretion in classifying prisoners in terms of their custodial status, this does not permit prison officials to engage in the type of overt racial discrimination alleged here.  Inmates have the constitutional right to be free from racial discrimination." (citation omitted)); Michael B. Mushlin, 2 Rights of Prisoners § 8:8 (5th ed. Sept. 2020 update) ("While the overwhelming majority of courts support the view that a prison inmate has no right to be assigned to or to retain a particular job, they nonetheless clearly support the view that decisions relating to job assignments or retention cannot be based on unlawful criteria, such as race, religion, age, or sexual orientation.").

But his allegation simply is not plausible, given that it is wholly conclusory and unsupported by anything other than his own belief that he has been the victim of discrimination.  That does not suffice.  Sandifer v. Tanner, Civ. Action No. 14-1670, 2015 WL 4168172, at *5 (E.D. La. July 1, 2015) ("Conclusory claims of discrimination do not establish discriminatory intent."); Harris v. Keith, No. 13-CV-750, 2013 WL 5516432, at *3 (W.D. La. Oct. 2, 2013) ("[A]n unsupported and conclusory allegation of racial malice is insufficient to state a claim for which relief can be granted."); accord Gonzales v. Currie, Civ. Action No. 2:13-CV-201, 2014 WL 222353, at *2 (S.D. Tex. Jan. 21, 2014) ("Neither personal belief nor vague and conclusory

6

allegations are sufficient to raise an equal protection claim."); Magee v. Crowe, Civ. Action No. 09-3142, 2010 WL 630011, at *13 (E.D. La. Feb. 19, 2010) ("[Plaintiff] has proffered only vague and conclusory allegations, based solely on his personal, subjective belief, that he was similarly situated to white inmates who were trustees at the jail and that [the defendant] discriminates against African-American inmates generally, and plaintiff particularly, in the assignment of trustee positions. [Plaintiff's] conclusory allegations are insufficient to state a claim for a violation of his right to equal protection.").[8]

Lastly, as noted, plaintiff also objects to the stated reasons he was given for the denials – namely, that he had made a suicidal statement and had a rod in his leg. He believes those reasons were defamatory. However, once again, there is a problem: Even if those explanations could be considered defamatory, which seems questionable at best, defamation, without more, simply is not a constitutional tort. See, e.g., Siegert v. Gilley, 500 U.S. 226, 233 (1991) ("Defamation, by itself, is … not a constitutional deprivation."); Mowbray v. Cameron County, Texas, 274 F.3d 269, 277 (5th Cir. 2001); Kerr v. Lyford, 171 F.3d 330, 339 (5th Cir. 1999), abrogated in part on other grounds by Castellano v. Fragozo, 352 F.3d 939 (5th Cir. 2003); State of Texas v. Thompson, 70 F.3d 390, 392 (5th Cir. 1995) ("Allegations of damage to one's reputation ... fail to state a claim of a denial of a constitutional right."); Oliver v. Collins, 904 F.2d 278, 281 (5th Cir. 1990) ("[I]njury to reputation alone does not give rise to section 1983 liability."); Davis v. Myers, Civ. Action No. 08-4492, 2008 WL 4747424, at *2 (E.D. La. Oct. 17, 2008); accord Wolf v. English, No. 99-40853, 2000 WL 633588, at *2 n.2 (5th Cir. Apr. 28, 2000) ("[Plaintiff] does not have a

---

[8] Moreover, not only is the allegation of discrimination conclusory and unsupported, the Court notes that is also suspect, given plaintiff's acknowledgement at the Spears hearing that **other** inmates of his race have been granted trusty status and participated in the work-release program at the facility.

7

constitutional right to be free from defamation and emotional distress, and therefore he cannot assert a claim for such damages under § 1983.").

## Disrespect

Plaintiff's contention that he was treated disrespectfully by the jail nurse likewise is not actionable under federal law. Although such disrespect is unprofessional, it, without more, simply does not rise to the level of a constitutional violation. See, e.g., Naquin v. Jack, Civ. Action No. 20-458, 2020 WL 8675909, at *11 (E.D. La. July 16, 2020) ("[P]laintiff cannot premise his § 1983 claim on alleged rude or disrespectful comments by prison personnel."), adopted, 2021 WL 780750 (E.D. La. Mar. 1, 2021); Jones v. Ledet, Civ. Action No. 19-10969, 2019 WL 6040091, at *4 (E.D. La. Oct. 22, 2019) ("[W]hile it is unseemly for jail officials to taunt or otherwise verbally abuse inmates who have little or no ability to respond without subjecting themselves to a disciplinary action (or worse), purely verbal abuse simply does not run afoul of any federal constitutional protection."), adopted, 2019 WL 6036706 (E.D. La. Nov. 14, 2019). Moreover, a medical staff member's poor bedside manner is not alone actionable or indicative of deliberate indifference to a serious medical need. See, e.g., Boone v. Buchanan, Civ. Action No. 6:07CV242, 2008 WL 744247, at *14 (E.D. Tex. Mar. 19, 2008).

## Denial of Eyeglasses

Lastly, plaintiff claims that his constitutional rights were violated when the jail officials failed to provide him with free eyeglasses. That claim at least nominally implicates a federally protected right: A convicted prisoner has a federal constitutional right not to have his serious medical needs met with deliberate indifference. Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). His particular claim, however, is insufficient to survive screening for the following reasons.

The first question regarding the claim is whether plaintiff's alleged vision impairment qualified as a "serious medical need." "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). Clearly, in **some** circumstances, a vision impairment may be so severe as to constitute a serious medical need. See, e.g., Koehl v. Dalsheim, 85 F.3d 86, 88 (2d Cir. 1996) (vision impairment resulting in double vision, loss of depth perception, headaches, and near blindness was a serious medical need); Benter v. Peck, 825 F. Supp. 1411, 1416-17 (S.D. Iowa 1993) (holding that denial of eyeglasses to a prisoner with 20/400 vision constituted deliberate indifference to a serious medical need). On the other hand, less severe vision impairments do not qualify. See, e.g., Roddy v. McBride, No. 93-4063, 1995 WL 377062, at *2 (7th Cir. Apr. 26, 1995) (finding that deterioration of inmate's eyesight resulting from the failure to provide eyeglasses "was not a serious medical need demanding immediate attention"); Bellah v. McGinnis, No. 94-1704, 1994 WL 664926, at *1 (6th Cir. Nov. 23, 1994) ("[M]oderate nearsightedness does not constitute a serious medical need."); Swaissi v. Cotten, No. 3-01-CV-1607-D, 2002 WL 492905, at *2 (N.D. Tex. Mar. 28, 2002) (concluding that nearsightedness causing difficulty reading, writing, and watching television was not a serious medical need). At this point, the Court has insufficient information before it to assess the seriousness of plaintiff's alleged vision problem.

However, that does not necessarily mean that plaintiff's claim should be allowed to proceed. Rather, even if the Court simply assumes that his purported vision problem did rise to the level of a serious medical need, plaintiff has not sufficiently alleged the required deliberate indifference necessary for a non-frivolous claim. "For an official to act with deliberate

indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Harris, 198 F.3d at 159 (5th Cir. 1999) (citation and quotation marks omitted).  Further, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference …." Alton v. Texas A&M University, 168 F.3d 196, 201 (5th Cir. 1999).

Here, there is simply no indication that jail officials were aware that plaintiff had a serious vision impairment.  On the contrary, when he complained that he needed eyeglasses, he was told that no vision problems were indicated during his intake screening two months earlier.  In light of that fact, he was given two options:  he could buy reading glasses from the commissary or he could provide documentation showing that he had previously been prescribed eyeglasses.  A jail official cannot be considered to act with deliberate indifference simply for refusing to provide a medical device for a self-proclaimed, unsubstantiated medical need for a condition which was not revealed during screening and which was not otherwise objectively apparent.  Moreover, if plaintiff had in fact been prescribed eyeglasses in the past as he contends, requiring him to produce evidence of that fact before he would be provided new glasses at no cost for a previously undeclared and unapparent medical condition was not unreasonable.

To the extent that plaintiff is once again arguing that the **actual** reason for the denial was racial discrimination, his allegations again fall short.  In this instance, he does at least allege that two White inmates were provided with eyeglasses without having to produce documentation of a prior prescription.  Nevertheless, even if that is true, it is not alone sufficient.  "The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all persons **similarly situated** should be treated alike." Wood v. Collier, 836 F.3d 534, 538 (5th Cir. 2016) (emphasis

added; quotation marks omitted); accord Cunningham v. Beavers, 858 F.2d 269, 272 (5th Cir. 1988) ("The Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike; it does not require classes of people different in fact or opinion to be treated in law as though they were the same."). Here, plaintiff has failed to adequately allege that he was similarly situated to the White inmates. Specifically, plaintiff was denied eyeglasses because no eye problem was identified during the jail intake screening; however, at the Spears hearing, plaintiff expressly conceded that he did not know whether the Whites inmate had vision problems detected during the intake vision screening process. Because plaintiff does not allege that a non-Black inmate **without an eye problem identified during the jail intake screening** was given free eyeglasses without producing documentation of an eye problem, he has not adequately alleged an equal protection claim.

For the foregoing reasons, it is apparent that many of plaintiff's claims herein simply do not implicate "any rights, privileges, or immunities secured by the Constitution and laws" of the United States, as is required for an actionable claim brought under 42 U.S.C. § 1983. Therefore, those claims lack arguable basis in law and so are, by definition, frivolous. Further, the remainder of his claims, although properly invoking constitutional protections, are conclusory and unsupported by any objective corroborating evidence. Therefore, plaintiff has not shown that those claims, while perhaps not frivolous, cross the required line "between possibility and plausibility of entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). As such, they fail to state a claim upon which relief may be granted. Id.

**RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim upon which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __16th__ day of August, 2021.

_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**